**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed September 12, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00830-CV

---

### GEORGE M. BISHOP, AS SUBSTITUTE TRUSTEE, Appellant,

### V.

### MARY BETH CLAWSON AND JOHN RIDDLE, Appellees.

---

**On Appeal from the 212th District Court**
**Galveston County**
**Trial Court Cause No. 10-CV-0585**

---

## M E M O R A N D U M     O P I N I O N

Pro se appellant George M. Bishop, as substitute trustee, appeals the trial court's final judgment in favor of appellees Mary Beth Clawson and John Riddle, declaring a property Clawson and Riddle own in Bacliff to be Riddle's homestead and finding a promissory note and accompanying deed of trust on the property void. Clawson and Riddle, plaintiffs below, instituted this action to preclude an

attempted foreclosure action initiated by FETC Corporation,[1] the holder of the note and beneficiary of the deed of trust, and Bishop, as substitute trustee under the deed of trust. The trial court also ordered a take-nothing judgment against any counterclaims of FETC and Bishop. In two issues, Bishop contends that the trial court erred by striking FETC's pleadings and rendering judgment without hearing evidence, and by dismissing Bishop's counterclaims for lack of jurisdiction. For the reasons explained below, we affirm in part and reverse and remand in part.

I

The factual background of this case is drawn largely from the parties' pleadings and other documents in the clerk's record, as the reporter's record includes only two brief non-evidentiary hearings.

Mary Beth Clawson and her son, John Riddle, own a home in Bacliff (the property). In 2007, Arbor Builders, LLC, borrowed $1,040,000.00 from Texas Community Bank to build a house in Harris County. As the manager of Arbor Builders, Riddle executed the promissory note. At the request of the Bank, Clawson executed a second-lien deed of trust as additional collateral to secure the note. The Bank later transferred the note and deed of trust to FETC Corporation. At the time of the transfer, the remaining unpaid principal totaled $615,224.63.

In 2009, FETC sought to foreclose on the property. A foreclosure sale was scheduled for March 2, 2010. Bishop, as substitute trustee, sent notice of the foreclosure sale to the registered agent for Arbor Builders. He did not send notice to either Clawson or Riddle.

When they learned of the attempt to foreclose, Clawson and Riddle sued FETC and Bishop to stop the sale, seeking declaratory and injunctive relief.

---

[1] FETC is not a party to this appeal.

2

Clawson and Riddle alleged that Bishop failed to give them proper notice of the foreclosure sale, the foreclosure was wrongful, and the deed of trust on which FETC and Bishop sought to foreclose was void because the property was Riddle's homestead. Clawson and Riddle also requested an accounting to determine the amount, if any, Arbor Builders owed on the note. Clawson and Riddle supported their petition with affidavits and related documents.

On March 15, 2010, the trial court granted Clawson's and Riddle's request for a temporary injunction, enjoining FETC and Bishop from proceeding with the foreclosure sale on the property during the pendency of the lawsuit. In May, Bishop moved to dissolve the temporary injunction, alleging in part that the temporary injunction was issued without notice to either FETC or Bishop and the findings recited in the order were unsupported by or contrary to the evidence. On January 14, 2011, the trial court granted Bishop's motion and dissolved the temporary injunction, allowing the foreclosure sale to proceed on February 1.

Clawson and Riddle responded by filing a "Verified Application for Temporary Restraining Order and Temporary Injunction and to Vacate Order Granting Motion of Defendant to Dissolve Temporary Injunction." In this filing, Clawson and Riddle contended, among other things, that they had received no notice of the hearing on Bishop's motion to dissolve the temporary injunction and they were not represented by counsel at the time. On January 31, the trial court granted a temporary restraining order enjoining FETC and Bishop from proceeding with the foreclosure during the pendency of the lawsuit. Despite the order, Bishop proceeded with the foreclosure sale on February 1.[2]

Upon discovering that the foreclosure sale had occurred, Clawson and

---

[2] According to Bishop's appellate brief, the property was ultimately sold to FETC for $10,000.00.

Riddle moved to set aside the sale of the property. By order signed February 18, the trial court found that the foreclosure sale was wrongful and in violation of the court's temporary restraining order. The trial court ordered the sale rescinded, canceled, and set aside. The court also found that Bishop failed to give Clawson and Riddle proper notice of the hearing on his motion to dissolve the March 15 temporary injunction at a time when Clawson and Riddle were appearing pro se. Consequently, the court vacated its January 14 order and reinstated the temporary injunction so as to preserve the status quo pending trial, which was set for March 18, 2011. Prior to the hearing date, Bishop amended his original answer to assert a general denial as well as several allegations against Clawson and Riddle.

On March 10, Clawson and Riddle filed a first amended petition. Clawson and Riddle sought to quiet title to the property and, among other things, requested a declaration that the property was Riddle's homestead and therefore the lien claimed by FETC was invalid or void.

On April 28, Bishop filed a second amended answer on his behalf as substitute trustee and a first amended answer and counterclaims on behalf of FETC. The answers and counterclaims were combined into a single pleading and reflected a jury demand for both defendants. Bishop paid the filing fee. Although the answer contained signature lines for both Bishop and FETC's counsel, only Bishop signed the pleading.

In the combined answers, Bishop challenged Riddle's claim that the property was his homestead, asserting that both Clawson and Riddle had denied any homestead interests in documents filed in the Galveston County deed records. Bishop also claimed, among other things, that Clawson had conveyed an interest in the property to Riddle in 2009 without obtaining FETC's written permission, and that she made the conveyance to circumvent an existing judgment against her.

4

Bishop further claimed that Clawson and Riddle defrauded FETC and should be estopped from seeking the relief they requested. Additionally, Bishop asserted that the second lien deed of trust was a valid "construction mortgage." Finally, Bishop claimed that he had received no notice of the issuance of the temporary restraining order on January 31, 2011, and therefore his foreclosure on the property on February 1, 2011, was effective to cut off Clawson's and Riddle's claims to the property. The answer also reflected a request for damages as well as costs and attorney's fees for filing a frivolous suit.

About two weeks later, Bishop filed a third amended answer solely on his own behalf as substitute trustee. In this third amended answer, Bishop repeated many of the same claims made in the second amended answer, including his claim that Clawson's and Riddle's suit was frivolous and brought in bad faith, and made several new allegations. This pleading reflected that Bishop was representing himself pro se.

On March 2, Clawson and Riddle filed a notice of nonsuit, dismissing their case against Bishop as substitute trustee in its entirety. However, Clawson and Riddle filed no motion directed to Bishop's counterclaims. Three months later, Clawson and Riddle filed a motion for entry of a final judgment against FETC on the grounds that the trial court had previously stricken FETC's pleadings for discovery abuse. A later-filed notice of hearing directed to FETC reflected that the hearing on the motion was set for July 2, 2012. The certificates of service for both the motion and the notice of hearing on the motion reflected that they were sent only to FETC's counsel, not to Bishop.

For reasons not apparent from the record, the hearing was actually held on July 9, rather than July 2. Neither Bishop nor counsel for FETC attended the hearing. At the hearing, Clawson's and Riddle's attorney represented that FETC's

5

counsel had not informed him of any disagreement concerning the proposed order. The trial court signed the final judgment against FETC that same day.

The final judgment reflected that, "The Court having stricken the pleadings of Defendant, the allegations of Plaintiffs' pleadings are admitted and Final Judgment by default should be entered against Defendant, FETC Corporation . . . and in favor of Plaintiffs, Mary Beth Clawson and John Riddle . . . ." The trial court also declared that the property was Riddle's homestead, the promissory note and its accompanying lien were "void, unenforceable and extinguished," and the substitute trustee's deed filed of record in Galveston County was "void and of no affect [sic]." Relevant here, the trial court also held that "[FETC] shall take nothing by its counterclaims, if any. This includes any 'counterclaims' that may have been filed by the Defendant, George M. Bishop, who was previously non-suited by Plaintiffs." FETC has not appealed the judgment.

On August 7, Bishop filed a motion for new trial on his own behalf as substitute trustee. In the motion, Bishop asserted that the July 9 final judgment should be set aside because (1) there was no notice to any party of the trial or hearing that resulted in the judgment; (2) there were no pleadings or evidence to support the judgment; (3) Bishop's pleadings had not been stricken and included requests for affirmative relief, which were "disregarded by the trial court"; (4) a jury fee was paid but questions of fact were resolved without a jury and without notice; and (5) there were no pleadings or evidence to support the trial court's findings and conclusions.

In response to Bishop's motion for new trial, Clawson and Riddle filed a "Motion to Dismiss for Lack of Jurisdiction," alleging that (1) Bishop was nonsuited on March 1, 2012; (2) at the time of the nonsuit, Bishop's pleadings were "purely defensive and contained no claim for affirmative relief"; (3) Bishop

6

was not a party to the final judgment signed on July 9, 2012; and (4) Bishop "has no standing to move for new trial." Clawson and Riddle also pointed out that "Bishop is not an attorney and may not appear" for FETC Corp. The sole relief requested was that the trial court strike Bishop's motion "for lack of subject[-]matter jurisdiction."

A hearing was held on Clawson's and Riddle's motion, which Bishop also attended. At the hearing, the attorney for Clawson and Riddle repeated the arguments made in the motion. Bishop replied that, contrary to Clawson's and Riddle's assertions, he had filed counterclaims against them, including allegations of fraud, estoppel, and breach of a covenant, as well as a counterclaim seeking damages for their bad-faith claims. Bishop stated that he was present on behalf of himself only, and represented that he had personally filed his counterclaims and paid the filing fee for them. Bishop also informed the trial court that, even though his counterclaims were never dismissed and he had paid the jury fee, he had received no notice of the hearing on Clawson's and Riddle's motion for entry of final judgment. At the conclusion of the hearing, the trial court stated that it was going to grant Clawson's and Riddle's "plea to the jurisdiction."

On August 17, 2012, the trial court signed an order granting Clawson's and Riddle's motion to dismiss for lack of jurisdiction. This appeal followed.

II

On appeal, Bishop contends that the trial court erred in (1) entering final judgment without hearing any evidence, and (2) dismissing his counterclaims for want of jurisdiction. Clawson and Riddle respond that Bishop lacks standing to raise issues on appeal arising from the entry of a judgment against FETC. Additionally, Clawson and Riddle argue that Bishop's answer presented only defensive issues, not requests for affirmative relief, and therefore the trial court did

7

not err in disposing of Bishop's motion for new trial through a jurisdictional challenge.

A

In his first issue, Bishop contends that the trial court erred in "entering final judgment without hearing any evidence." According to Bishop, the trial court improperly struck FETC's pleadings as a death-penalty sanction and then disregarded Bishop's counterclaims seeking affirmative relief after Clawson and Riddle nonsuited their claims against him. Bishop maintains that he has a constitutional right to a jury trial, and because neither Bishop nor the attorney for FETC was notified of the hearing on Clawson's and Riddle's motion for entry of judgment, they could not have waived that right. *See* Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate."). Consequently, Bishop urges, the trial court erred in failing to set this case for a jury trial. In response, Clawson and Riddle contend that Bishop lacks standing to complain about the trial court's striking of FETC's pleadings and the subsequent entry of a judgment against FETC; Bishop is not an attorney and thus does not and cannot represent FETC; and Bishop's capacity as substitute trustee does not give him a justiciable interest in the trial court's declaration that the note and deed of trust held by FETC are void and unenforceable.

Standing is a constitutional prerequisite for a party to bring a lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The issue of standing focuses on the question of who may bring a lawsuit. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). A court has no jurisdiction over a claim pursued by a party who lacks standing to assert the claim. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). When a plaintiff lacks standing, the proper resolution is to dismiss the lawsuit. *Id.*

8

Generally, to enforce a contract, a litigant must be either a party to the contract or an intended third-party beneficiary. *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2010, no pet.). This court has previously explained that although lawyers and courts occasionally state informally that a person has no "standing" to enforce a contract if that person is not a party to the contract or a third-party beneficiary of it, that person's inability to sue goes to the merits and does not deprive courts of jurisdiction. *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When it is established that a party lacks entitlement to sue on a contract, "the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction." *Heartland Holdings, Inc.*, 316 S.W.3d at 7.

Bishop's counterclaims in his third amended answer are directed to enforcement of the note and deed of trust in his capacity as substitute trustee. Bishop also argues that he is a third-party beneficiary of the deed of trust because as substitute trustee he can, upon default, sell the property in question for a fee not exceeding five percent of the sales price. Bishop maintains that he has a justiciable interest in the case because the trial court's judgment permanently enjoined the foreclosure and nullified the lien without hearing any evidence, thus depriving him of the ability to earn his fee. Because Bishop's entitlement to sue under the note and deed of trust is not a jurisdictional issue but an issue that is appropriate for resolution on the merits, we reject Clawson's and Riddle's arguments that Bishop lacked standing to assert—and thus the trial court lacked jurisdiction to rule upon—Bishop's counterclaims. *See id.*; *Criaco*, 225 S.W.3d at 898.

Clawson and Riddle also respond to Bishop's complaint that neither he nor FETC's attorney received notice of the hearing on Clawson's and Riddle's motion

for entry of final judgment. Clawson and Riddle argue that the record shows their attorney served FETC's attorney by certified mail with the motion and the notice of hearing. Consequently, they argue, proper notice is presumed. But Clawson and Riddle do not contend that their attorney served Bishop, who was appearing pro se, with notice of the motion and hearing. Nor has our review of the record revealed any evidence that Bishop received actual or constructive notice of the motion and hearing.

Notably, at the time Clawson and Riddle set their motion for entry of final judgment for hearing, they had already nonsuited their claims against Bishop some three months earlier. However, Clawson and Riddle had filed no motions for summary judgment, special exceptions, or other challenges to Bishop's counterclaims raising the arguments they now make on appeal. Instead, it appears that Clawson and Riddle simply assumed that their nonsuit rendered Bishop a nonparty to the case notwithstanding any counterclaims included in his answer— an assumption Bishop was given no opportunity to challenge before a final judgment was entered against him.

In their motion for entry of final judgment, Clawson and Riddle sought a judgment against FETC on the grounds that the trial court had previously granted a "Motion for Entry of Order Striking Pleadings of [FETC]."[3] Clawson's and Riddle's motion was supported by Riddle's affidavit, in which he averred that the property was at all relevant times his homestead and primary place of residence, and their attorney's affidavit with attachments in support of the Clawson's and Riddle's request for attorney's fees. In the motion, Clawson and Riddle prayed that the trial court enter a final judgment in their favor against FETC for the relief

---

[3] The record does not include FETC's pleadings or an order striking FETC's pleadings, but the final judgment reflects that the trial court struck FETC's pleadings as a sanction for discovery abuse.

requested in their petition and "for all further relief to which [Clawson and Riddle] may be entitled." Thus, Clawson and Riddle sought to dispose of the case in its entirety on the merits by a motion supported by affidavits. Clawson's and Riddle's motion was, for all practical purposes, the functional equivalent of a motion for summary judgment, and therefore we will analyze it applying traditional summary-judgment standards. *See Heartland Holdings, Inc.*, 316 S.W.3d at 7 (reviewing appellee's plea to the jurisdiction, which was based on appellant's lack of standing to enforce a contract, under summary-judgment standards rather than standards governing pleas to the jurisdiction); *see also Harris Cnty. Hosp. Dist. v. Textac Partners I*, 257 S.W.3d 303, 312–13 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that motion to dismiss was the functional equivalent of a motion for summary judgment when the motion was directed to the merits of the case rather than procedural matters).

Because Bishop remained a party to the case and his counterclaims had never been addressed, he was entitled to notice that a dispositive motion had been filed and set for hearing. *See Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (stating that notice of a hearing or submission of a summary[-]judgment motion is required); *Tanksley v. CitiCapital Commercial Corp.*, 145 S.W.3d 760, 763–64 (Tex. App.—Dallas 2004, pet. denied) (sustaining appellant's contention that summary-judgment process "circumvent[ed] his constitutional right to a jury trial" when no evidence showed appellant was served with motion for summary judgment or notice of hearing). Bishop preserved his complaint for appeal because he alerted the trial court to the lack of notice in his motion for new trial. *See Tanksley*, 145 S.W.3d at 764.

Moreover, Clawson's and Riddle's failure to provide notice of the hearing on their dispositive motion not only deprived Bishop of an opportunity to respond

to their motion; it also denied Bishop the opportunity to assert his counterclaims prior to the entry of the final judgment. Indeed, the trial court's final judgment reflects that the trial court adjudicated Bishop's counterclaims on the merits despite the absence of any development of a record on the counterclaims when the trial court ordered that Bishop "shall take nothing" on "any 'counterclaims'" he filed. Consequently, the trial court's entry of a final judgment against Bishop without notice of the motion and hearing was harmful error. *See* Tex. R. App. P. 44.1(a); *see also Lester v. Capital Indus., Inc.*, 153 S.W.3d 93, 96 (Tex. App.—San Antonio 2004, no pet.) (holding that lack of notice that a summary-judgment motion had been filed and was set for hearing "was both injurious and prejudicial because [the non-movant's] attorney could not file a response"),

We therefore sustain Bishop's first issue.

B

In his second issue, Bishop contends that the trial court erred in dismissing his counterclaims for want of jurisdiction because his third amended answer included affirmative claims for relief that the trial court failed to consider. Bishop also asserts that Clawson's and Riddle's motion to dismiss for lack of jurisdiction was not a proper plea to the jurisdiction because it "was neither a challenge to the facts or to the sufficiency of the pleadings and should have been denied." And, if Bishop's pleadings were in fact deficient, he contends that he should have been given an opportunity to amend his pleadings.

In response, Clawson and Riddle argue that Bishop's answer did not contain counterclaims for affirmative relief, but merely set out various defenses that became moot when Clawson and Riddle nonsuited their claims against Bishop. Moreover, as they argued above, Clawson and Riddle contend that Bishop lacks standing to assert any counterclaims on behalf of FETC. Clawson and Riddle

12

further argue that Bishop's claims for damages under theories of estoppel and fraud are "concepts [that] can be asserted as a defense to an action or as an affirmative claim and do not always constitute a counterclaim as a matter of law." Therefore, according to Clawson and Riddle, the trial court did not err by dismissing Bishop's counterclaims for lack of jurisdiction without hearing evidence.

Because of our disposition of the case, we express no opinion on the substance of Bishop's pleadings or the merits of the parties' arguments concerning Bishop's counterclaims. However, we note that, at the very least, Bishop's live answer included a claim for damages against Clawson and Riddle for bringing an action in bad faith. In paragraph XI of his third amended answer, Bishop alleges that Clawson's and Riddle's claim that the property is a homestead and not subject to the liens is "frivolous and brought in bad faith as well as for purposes of harassment," and he requests "costs and attorney's fees." Under Rule 162 of the Texas Rules of Civil Procedure, "[a] dismissal . . . shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court." Tex. R. Civ. P. 162; *see also Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 894 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (stating that "a claim for frivolous lawsuit damages is a claim for affirmative relief"). Thus, Bishop's assertion of this claim, whether meritorious or not, survived Clawson's and Riddle's nonsuit of their claims against him and belies their contention that Bishop was no longer a party to the lawsuit at the time they moved for entry of final judgment.

The trial court granted Clawson's and Riddle's motion to dismiss Bishop's claims for lack of jurisdiction, expressly finding that Bishop "is not a party to this matter, lacks standing to bring a Motion for New Trial[,] and the Court lacks

subject-matter jurisdiction to hear any motion from Bishop, including Bishop's Motion for New Trial." But each of these statements is manifestly incorrect. Bishop was a party to the case, and, as we discussed above, the nature of his claims did not deprive the trial court of jurisdiction, but rather were appropriate for resolution on the merits. *See Criaco*, 225 S.W.3d at 898. Clawson and Riddle sued Bishop; a judgment on the merits was rendered against him; and he had at least one affirmative claim for relief—his claim against Clawson and Riddle for damages for filing frivolous and bad-faith claims—pending at the time of the judgment. Moreover, Bishop timely brought his motion for new trial after a judgment had been rendered against him without notice, evidence, or an opportunity to be heard. *See* Tex. R. Civ. P. 320 ("New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion . . . ."). Therefore, the trial court erred in granting Clawson's and Riddle's motion to dismiss for lack of jurisdiction and striking Bishop's motion for new trial.

Accordingly, we sustain Bishop's second issue.

\* \* \*

In sum, the trial court erred in rendering a take-nothing judgment against Bishop and striking his motion for new trial, thereby effectively eliminating his counterclaims—including his counterclaim against Clawson and Riddle for damages for filing frivolous and bad-faith claims—without notice, without a motion, without evidence, and without an opportunity to respond. These errors are not harmless. Therefore, we reverse that portion of the trial court's final judgment ordering a take-nothing judgment against Bishop on his counterclaims and remand for further proceedings consistent with this opinion. Although Bishop also requests that we reverse the trial court's ruling against FETC on its counterclaims, FETC has not appealed the judgment and Bishop, who is not an attorney, may not

14

represent FETC on appeal. *See Rabb Int'l, Inc. v. SHL Thai Food Serv., LLC*, 346 S.W.3d 208, 209 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Corporations may appear in court and be represented only by a licensed attorney."). Accordingly, we affirm the remainder of the trial court's judgment.


/s/     Jeffrey V. Brown
         Justice


Panel consists of Justices Brown, Christopher, and McCally.